May it please the Court, Stephen Rosales on behalf of Plaintiff Appellant, excuse me, Barbara Hamilton. The case law in the circuit has long held that an administrative law judge's residual functional capacity, detailing what limitations an individual has because of their medical impairments, must also be found in the hypothetical question that forms the basis of identification of the alternative work that the ALJ says that an individual can still do. Additionally, case law in the circuit says that regardless of what RFC the ALJ finds, when a vocational expert testifies that limitations within that RFC prevent the ability to perform certain kinds of work or only allow certain kinds of work, if that level of work equates to a finding of disability under the Commissioner's medical vocational guidelines, then the application is mandatory. That's the Cooper decision. Cooper v. Sullivan cited in the briefs. There was some confusion at the district court in the decision, which is at tab 17 on pages 5 or 6, where the district court describes only three hypotheticals in the record. There's actually five hypotheticals in this record. Four were asked by the ALJ and one was asked by administrative counsel. The ALJ started out with the most restrictive RFC, I'm sorry, hypothetical question on page 37 of the record and then proceeded over the next four or five pages, removing limitations. It's somewhat easier to conceptually understand it if we start from the reverse and look at the most expansive and then work backwards. The ALJ, as the fourth, I'm sorry, as its third hypothetical, the fourth hypothetical was simply an individual that performed some type of work activity but needed to take an hour's worth of extra breaks during the day, which the VE said there would be no work, obviously from common sense, because most employers won't tolerate someone being off the job for a total of an hour and an eight-hour day. But the ALJ's third hypothetical, which appears at AR 42, was simply assume someone who can perform the full range of light work. Well, obviously, the vocational expert said the full range of light work was available to such a person. The second hypothetical at AR's bottom of 40, top of 41, was to assume light work that allowed for some sitting and standing during the day, not necessarily at the option of the individual, but just contemplated some sitting or standing in performance of light work. The vocational expert identified some delivery jobs, specifically a vending machine deliverer, as well as a cashier, that some parts of the day could be standing, some parts of the day could be sitting, but not necessarily at their pleasure because of the demands of the job. The very first hypothetical at AR 38 was to assume a light RFC, or a light residual functional capacity, with the ability to sit or stand at will. And the vocational expert clearly makes it known that the limitation or the addition of those two words, at will, prevented an individual from performing anything other than sedentary work. There was also in these hypotheticals some discussion of the ability to stoop as either being occasionally or half the day. But the testimony makes clear throughout, the vocational expert's dispositive decision is, if an individual must at their discretion be able to alternate sitting or standing when they need to, they are limited to sedentary work. And that's the crux of the case. Because if Ms. Hamilton, who is at all times during her application, having been born in October of, I believe October 16th of 1955, has been over the age of 50, and the Ms. Hamilton, who has no past relevant work, who has, in this case, less than a high school education, I believe a limited education, who is limited to performing only sedentary work, as the vocational expert has described, when they have this at will component, then they're automatically found disabled. The fixation on whether or not an individual could stoop for half the day or stand for up to four hours. That really wasn't in the case, was it? I'm sorry? That really wasn't in the case, was it? The stooping business? Right. The ALJ ultimately found that this individual, Ms. Hamilton could, at page 14 in the record, could perform light work with the ability to sit or stand at will with no more than four hours of standing, with the ability to stoop for up to that amount of time or half the work day. That was the ultimate RFC. And that at will was within the ALJ's first hypothetical, which the vocational expert repeatedly said, there is nothing but sedentary work. The second hypothetical asked the vocational expert to assume the sit-stand option, but didn't use the words at will. Now, the district court seemed to imply that, based on their reading, that the VEs should have or did understand it to be at will, but when you read the totality of the VEs' testimony from 37 to 42 in the record page, it just doesn't make sense because here you have the VE emphatically saying if it's an at will requirement that this person has to stand or sit when they want to, there are no light jobs. Yet two pages later, when they're asked to assume a job that allows for some sitting or standing, that they could still do some reduced numbers of light jobs that contemplate getting in or out of a car on a delivery route or getting up to help a cashier or to be a cashier to help someone at the counter but then going back to sitting but not necessarily at will, it would be that if we're to assume that the second hypothetical included at will, then it means there's inconsistent testimony in the record and it just doesn't read that way. The only way to read the testimony in the record is that the first hypothetical included the at will limitation, which resulted in a limitation to sedentary jobs, the second hypothetical included the ability to sit or stand while doing light work, but not necessarily. From time to time. Exactly. And how I know this is on page 39. I'm sorry. On page 41. And as the vocational lecturer started to respond to the second hypothetical and said, well, we're back to the sedentary level, the LJ sort of lets the curtain go back and is thinking and says, I'm more interested in light jobs. And it's a sequential disability analysis. You start with the first step and you proceed through the analysis. Assessing the RFC comes before identifying jobs. And so by saying that he's more interested in light jobs, there's clearly a reason why you're interested in light jobs, because this person gets a disability that's sedentary. So if you understand the testimony, the ALJ thought he was asking the question with the reference to stand-sit option to encompass the at-will part they talked about, but the V.E. didn't answer or didn't understand the reference in the same way. And do I understand correctly? You're arguing the V.E.'s answer left out the at-will part. In response to the second hypothetical? Correct. The V.E. understood the second hypothetical as it was properly read to her. To sit-stand as part of a component of the job, but not necessarily at will. But in terms of the later questioning, you think the V.E. was answering the question as posed, not as intended, perhaps? I — Anyway, if I understand your argument, one, the ALJ found that there was — you had there as an at-will component. The V.E. testified that an at-will component added there are no jobs. Therefore, we have an error at step five, right? Correct. There are no jobs above sedentary. Yeah. Which essentially is saying no jobs for someone under the Commissioner's medical vocational guidelines, which mandate an automatic finding of disability or disability. You have about two minutes left, Your Honor. Reserve. I'm fine, Your Honor. Thank you. I'll reserve. Yeah. Good morning, Your Honors. I'm Elizabeth Feer, and I represent Michael Astew, the Commissioner of Social Security. Could you move the microphone just a little closer? You can bend it. It's a gooseneck. Okay. Is that better? No, no. Just bend the mic. I'm sorry. Bring the mic closer to your — Closer to my mouth. There you go. There we go. Okay. I represent Michael Astew, the Commissioner of Social Security in this case. An issue here is not a question of law. It's a question of interpreting the exchange between the ALJ and the V.E. There is no — Don't we have here what Paul Newman said and Pooleham Luke, failure of communication? I think it's the opposite. That's the problem. We really don't know, and shouldn't we say, go back and be more precise and let's get it right? I think it's exactly the opposite, actually. I think that it's clear. You can certainly interpret this record to reasonably say the ALJ and the V.E. understood each other. And the reason for that is you talked about the absence of at will in the third hypothetical question, but that's forgetting the exchange between the ALJ and the V.E. In between, that last — the question where the ALJ says, again, assume sit-stand option. But prior to that, on page 39, the V.E. was wondering how to answer the question, and she specifically asked, I guess my question is how frequent does this person need to stand during the day? Quote, the at will basis. The V.E. was still considering the at will basis. She was trying to figure out how many jobs this — what kind of jobs this person could do. When the ALJ finally clarified, okay — Well, I don't know. Right. There's some exchange in between. But by the time we get to page 41 and the ALJ starts saying, okay, again, assume the sit-stand option, but we're also going to assume the worker won't need to stand more than half the day. There's no reason to assume the V.E. This was not in response to the V.E.'s question specifically about at will. Once she had the full — at will doesn't have a specific legal definition. What we have to look at is in the context of this record, what did it mean? Well, at the top of 40, in the midst of this clarification, in fact, immediately after what you referred to, the ALJ says that's what's making it difficult. Well, why only the light jobs, you can think of, and a few more lines, and the V.E. gives a response in the second line of the response. They're not consistent with at will. But that's the unrestricted at will that was set forth in the first hypothetical question, which was at will throughout the record. Isn't that the condition that we're dealing with? We haven't had a founding — a finding to the contrary of that, have we, that the claimant doesn't have to be able to stand and sit as needed moment to moment? I think that it's — That's what at will means to me. That's what it means to you. That's what it can mean to some people in some context. But that's not what it means in the context of this exchange between the ALJ and the V.E. The ALJ was qualifying at will, sit, stand. In a perfect world, he would have included the at will in the final hypothetical question that he presented, but he didn't. That doesn't mean the V.E. was not still considering — giving her specific question about at will. And I would also like to point out — Well, then let me — then as you understand it, the question that starts in the bottom of page 40 when it says the worker needs a sit, stand option, that does not mean sit, stand at will. I think it does, because — It does. Yes. And — Well, then how can you reconcile the answer given by the V.E. with the language at the top of page 40 where the V.E. seems to say that light jobs are not consistent with at will? That — I can answer that by — the answer to that question is because the first time the ALJ presented at will, it was completely unrestricted. At will throughout the course of the workday. That's on page 38. On page 39, the V.E. asked about at will. On page 40 and 41, the ALJ modified the at will by saying the claimant can only stand 50 percent of the workday. And I would like to invite Your Honors to step back a little bit and look at this record as a whole, given the fact that there is no — Let me stop you right there, though, because when the V.E. says, well, how much does that mean? At will means how much is going to be standing and sitting. And the ALJ's response is, well, I don't know, and then presents a hypothetical question that appears to assume something which the ALJ just said she didn't know, which is that won't need to stand more than half the day. Where's the basis for including that in the question? Well, the ALJ first said, I don't know, but then went on to say, okay, sit-stand option with no more standing than — Where does that piece come from? Is there a finding, any evidence to support that proposition? There isn't. And admittedly, it's messy, but it's also reasonable to assume from this exchange that the V.E. was not dropping out at will in her calculation of the jobs that were available. She specifically asked the question — Well, that's kind of a stretch to say that. I'm sorry? It's kind of a stretch to say that. I don't think it's a stretch. I think it's — if you — to forget about it, you have to forget that the V.E. specifically asked a question about at will, and the ALJ continued to modify it. There's — at will doesn't mean one thing. It started out as unrestricted. By the time it got to the final questioning of the V.E. where she identified the three light jobs, it was modified. You can modify at will. There are cases where this Court has said define the at will. Well, in this case, our position is it is defined. It's defined to the extent that the ALJ and the V.E. were on the same page. They came up with these jobs. Well, here's what — on page 14, the finding is she must be allowed to sit and stand at will, although she will not need to stand more than half the day, and she can bend and stoop no more than half the day. That's the limitation as a factual matter that the ALJ finds, and that's not the limitation that was contained in the hypothetical. It was contained in the exchange of hypotheticals. My opponent wanted you to look at them in reverse order, but it makes much more sense to review them in the current logical order. Well, I suppose, but if we can't make any sense out of it, why should we remand it and have a clean hypothetical posed? Because the — what's at issue here is whether or not it was reasonable for the ALJ to interpret his exchange with the V.E. as saying someone with the modified at will sit-stand option could perform the jobs in question. And getting back to what I wanted to speak to before. But if they're talking past each other, how can it be reasonable for him to draw the inference that favors the Commissioner rather than one that favors the applicant? Well, first of all, it's not — one of the reasons why it's reasonable to assume the ALJ and the V.E. were on the same page is because the claimant was represented by an experienced disability attorney who didn't ask any follow-up questions about that issue. Right. Well, but you still have to support it with substantial evidence. I mean, I'm looking at 38, and the V.E. says there's no work, given the hypothetical limitations that we're — there's no work. That's — And then, as you say, it starts to get a little more layered, and there's no repudiation of no work with an at-will requirement, it seems to me. I would agree that with an absolutely unrestricted at-will option, there aren't any light jobs. My point is the Commissioner's position is it's not unrestricted, and that's evident by the exchange between the ALJ and the V.E. Wait a minute, though. When you say it's not unrestricted, what's not — what's restricted in the finding of the limitation on page 14? The at-will — he says at-will, sit-stand option, at-will, but, or although can't stand more than four hours during a day. That, by definition, limits the amount of time this person is going to be standing or sitting. And also, this record, the ALJ — Well, it means to me that you can — you have to get up and sit down any time you want to, as long as the cumulative standing doesn't exceed half a day. Well, and I don't think there's anything inconsistent with the jobs in this — in this case, if that's what you said. And if you look at the claimant's testimony, the ALJ likely assessed the sit-stand option, given her testimony that her legs became numb and changing positions alleviated. Well, she specifically said that didn't happen every day. She also specifically said that she purposefully drove 30 — 25 to 30 minutes at a time, which is sitting, because she wanted to get it over with, not stop during the way on her journey. That shows she has some control over it. She doesn't need an at-will sit-stand option. And if you look at the rest of the record — That may be true, but we're dealing with an RFC that appears to include an at-will option. But our position is that it's modified, and it's reasonable — So it doesn't modification. Does the modification really help you? Because sit- or stand-at-will during the day, but in any event, cannot take more than four hours of actual standing. And my understanding of at-will is when she feels she needs to do it. And we — does the record tell us how long she drives 25 minutes to get out of the way or whatever? But I think that may even be a greater restriction on her ability to form substantial gainful activity. Well, even if you do read it that way and that's reasonable, this Court has long held that as long as there's — it's also reasonable to read that RFC as modifying the at-will sit-stand option. And as long as — even if Clayman's position is perfectly reasonable, as long as the ALJ's position is reasonable, we should uphold the decision. My point is the at-will, according to my understanding, means when she feels she needs to change her position, sitting or standing, she has to be able to do it. She can't be driving down the expressway. That's why she can't be a delivery person. But in any event, she cannot perform any job where she has to stand more than half the day. Well, just including that any time that she can't stand more than half the day, that's putting a limit on. That's putting parameters on the sit-stand option. Not necessarily. But you could read it the way the Commissioner is reading it. And if they're both rational, then the ALJ's position should be upheld. Thank you. Okay. Thank you for your argument. And we'll hear rebuttal. Very briefly, with respect to the testimony, she testified about driving for approximately on pages 23 to 24 of the record, but then also talked at AR-29 that her maximum sitting was 20 to 30 minutes, 30 at max, 20 comfortably. So it's consistent. She's not doing anything greater while she's driving than she didn't testify just in general with respect to sitting. And that's at 29 and 32 in the record. Even if the Commissioner's reading of the second hypothetical is correct, it still results in disability, because the first hypothetical described the full range of light work. The Commissioner defines at Social Security ruling 8310 that light work requires approximately six hours of standing and walking. So the V.E. says if I'm going to assume someone who can stand a total of six hours but has to do it at will with sitting, there's only sedentary jobs. If I take what the Commissioner is saying, we've reduced the full standing of light work down to four hours of a maximum. And that was my point. And so if the Commissioner's correct, we win, because the second hypothetical further limits. If we assume that the at will is there even though it's not there, then the V.E. just misunderstood that the at will was there, and we could remand it to have her clarify it. But it really doesn't need clarification, because it's consistently the at will. And I'm not trying to argue that the at will needed to be in the RFC. The at will is in the RFC. And the V.E. testified at will means no jobs other than sedentary. And my fear here is that, as I've mentioned, where the ALJ says I'm looking for light jobs, if this case gets sent back, he's going to look for light jobs, although she's over 55 and so most likely what will happen is she, you know, may talk her butt. But I would urge the Court to seriously consider whether or not there's enough evidence in this record from our point of view there is that she is limited to no more than sedentary types of work and therefore should be found disabled for the reasons we've indicated in the briefs. Thank you, Your Honor. Thank you both for your arguments. It's been very helpful. And we will be in recess for 10 minutes before resuming the calendar. Thank you.
judges: Carr, Thomas, Clifton